**Joseph SONNEMAN, Appellant,**

**v.**

**Governor HICKEL, the State of Alaska, and other State Officers and Employees, Appellees.**

**No. S–4372.**

Supreme Court of Alaska.

Aug. 14, 1992.

Joseph A. Sonneman, pro se.

Jack B. McGee, Asst. Atty. Gen., Charles E. Cole, Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

This case challenges the act which created the Alaska Marine Highway System Fund, ch. 193, § 1, SLA 1990, AS 19.65.-050–100, on the grounds that the fund is dedicated to a special purpose in violation of article IX, section 7 of the Alaska Constitution. The trial court ruled that the act was constitutional because it merely " 'allows' the legislature to appropriate funds from the fund to the Alaska Marine Highways but does not require it." We conclude that most of the act is constitutional, that the limitation on departmental power to request that the fund be appropriated for capital improvements violates article IX, section 7, and that this section is severable from the rest of the act.

Briefly, the act[1] establishes the Alaska Marine Highway System Fund as a special

---

1. AS 19.65.050 provides in part:
    (b) It is the purpose of AS 19.65.050–19.65.-100 to
    (1) enable the Alaska marine highway system to manage and operate in a manner that will enhance performance and accountability by allowing the system to account for and spend its generated revenue;
    (2) provide the management tools necessary to efficiently operate the Alaska marine highway system;
    (3) within constitutional constraints, provide for a predictable funding base for system operations; and
    (4) provide for predictability and stability in the service level furnished to communities served by the system.
    AS 19.65.060 provides:
    (a) There is created, as a special account in the general fund, the Alaska marine highway system fund, into which shall be deposited
    (1) the gross revenue of the Alaska marine highway system;
    (2) money that is appropriated to the Alaska marine highway system fund by the legislature in an amount that is consistent from year to year and is the amount necessary ... to provide stable services to the public ...; and

    (3) any other money that is appropriated to the Alaska marine highway system fund by the legislature....
    (b) Nothing in this chapter exempts money deposited into the Alaska marine highway system fund from the requirements of AS 37.07 (Executive Budget Act) or dedicates that money for a specific purpose.
    AS 19.65.080 provides:
    [O]n an annual basis and under AS 37.07 (Executive Budget Act), the legislature may appropriate amounts from the Alaska marine highway system fund to the Alaska marine highway system.
    (b) The Department of Transportation and Public Facilities may request the legislature to appropriate money from the Alaska marine highway system fund to the marine highway system for capital improvements, if
    (1) the appropriation under (a) of this section has been made;
    (2) the amount in the fund, without regard to the appropriation under (a) of this section, exceeds the total of gross revenue deposited in the fund and the general fund appropriations under AS 19.65.060(a)(2) by 10 percent; and
    (3) the amount requested for appropriation under this subsection does not exceed 50 per-

account in the general fund. AS 19.65.-060(a). The Alaska Marine Highway System, the entity responsible for the state's ferries, must deposit the gross revenue obtained from operating the ferry system into this account. The legislature "may appropriate" amounts from the fund back to the Alaska Marine Highway System. AS 19.-65.080(a). In addition, the Department of Transportation and Public Facilities (DOTPF), within which the Marine Highway System is contained, may request that the legislature appropriate money from the fund to the Marine Highway System for capital improvements if certain conditions are met. First, the legislature must have made an annual appropriation from the fund. Second, the fund, without regard to the appropriation, must exceed the total of gross revenues plus non-lapsable general fund appropriations by ten percent. Finally, the request for capital appropriations may not exceed fifty percent of the balance remaining after the annual appropriation is made. AS 19.65.080(a) & (b).

The stated purposes of the fund are to "enhance performance and accountability," "provide the management tools necessary to efficiently operate" and, "within constitutional constraints, provide for a predictable funding base for system operations." AS 19.65.050(b). The legislature evidently intended that the Marine Highway System operate under constraints and incentives based partially on the revenues generated by the Marine Highway System. In order for this to work, there must be a reasonable expectation that the revenues generated by the system can be used by the system.

Section 7 of article IX of the Alaska Constitution provides: "The proceeds of any state tax or license shall not be dedicated to any special purpose...." [2] The question is whether the act violates this constitutional prohibition.[3]

The constitutional convention committee which drafted the prohibition on the dedication of funds commented that the reason for the prohibition is to preserve control of and responsibility for state spending in the legislature and the governor.

> Even those persons or interests who seek the dedication of revenues for their own projects will admit that the earmarking of taxes or fees for other interests is a fiscal evil. But if allocation is permitted for one interest the denial of it to another is difficult, and the more special funds are set up the more difficult it becomes to deny other requests until the point is reached where neither the governor nor the legislature has any real control over the finances of the state. In one Rocky Mountain state the legislature is free to appropriate only 17 per cent of the tax collections; the rest are dedicated. In Alaska at present, 27 per cent of territorial funds are earmarked, primarily for school construction and roads.

6 Proceedings of the Alaska Constitutional Convention (PACC) Appendix V at 111 (Dec. 16, 1955).

Without earmarked funds, the constitutional framers believed that the legislature would be required to decide funding priorities annually on the merits of the various

---

cent of the balance remaining after the appropriation for annual management and operations is made under (a) of this section.

(c) The unexpended and unobligated balance of money appropriated from the Alaska marine highway system fund lapses into the Alaska marine highway system fund at the end of the fiscal year for which it was appropriated.

**2.** The section proceeds: "except as provided in section 15 of this article [creating the Permanent Fund] or when required by the federal government for state participation in federal programs. This provision shall not prohibit the continuance of any dedication for special purposes existing upon the date of ratification of this section by the people of Alaska." Alaska Const. art. IX, § 7.

**3.** Even though the revenues generated by the Marine Highway System are derived from the transportation of passengers and freight and not from state taxes or licenses as those terms are usually understood, the State does not argue that section 7 does not apply to the Marine Highway Fund. This is doubtlessly because this court in *State v. Alex*, 646 P.2d 203 (Alaska 1982), construed section 7 to prohibit the dedication of "any source of revenue." *Id.* at 210. We have no occasion to question this construction in the present case.

proposals presented. Delegate Barrie White, the spokesman. for the committee which drafted section 7, stated in the convention debates:

> [t]he Committee feels that if you accept the principle of not earmarking, it puts everyone in the same position and that the legislature will then be in the position being able to decide each case on its merits. If you go the other route and allow for earmarking or start drawing up all the exceptions that everybody would want to have drawn up, you are then back to the situation that most states now find themselves in, where an ever-increasing percentage of their revenues are earmarked for special purposes and an ever-decreasing amount is available to the general fund.

4 PACC 2364 (Jan. 17, 1956). Delegate White was then engaged in a colloquy about the appropriation of funds collected through licenses to agencies which had collected them:

> Delegate Gray: "It doesn't earmark it but the talking point that these organizations have for the use of this money that is rightfully theirs, why, they haven't been precluded, they just have to sell their viewpoint to the legislature and if they need the money, why they probably could get it if they could talk them into it."

> Delegate White: "They have to sell their viewpoint along with everybody else."

*Id.* at 2367.

The principle on which the act is based, that the administrators of the Alaska Marine Highway System and the legislature will treat the fund as if the Marine Highway System had a right to its proceeds, is inconsistent with the model contemplated by the anti-dedication clause, under which the disposition of all revenues will be decided anew on an annual basis. Nevertheless, the expectations created by the act are merely a "talking point" because they im-

pose no legal restraint on the appropriation power of the legislature.

The act clearly states that the fund is part of the general fund and it may not be spent until and unless it is appropriated by the legislature. AS 19.65.060(b).[4] However, Sonneman argues that the act prohibits the legislature from appropriating money from the fund to government purposes other than the Marine Highway System. Although there is no explicit prohibition, Sonneman contends that there is an implicit one based on a maxim of statutory construction and on various expressions of intent found in the legislative history. The State contends that the act does not prohibit the legislature from using money in the fund for any purpose and, more generally, that the act is basically only an accounting tool designed to give a clear picture of Marine Highway System revenues to the legislature and to the Marine Highway System administrators. We turn first to Sonneman's statutory construction argument.

Since the act states that "the legislature may appropriate amounts from the ... fund to the ... marine highway system," AS 19.65.080(a), Sonneman argues that by implication the legislature may not appropriate amounts from the fund for any other purpose. This argument is based on the maxim *expressio unius est exclusio alterius*, meaning the expression of one thing implies the exclusion of others. While this maxim is often a useful and logical guide to the meaning of an enactment, it does not always apply. We declined to apply it in *Chevron USA, Inc. v. LeResche*, 663 P.2d 923, 930–31 (Alaska 1983), finding that the limitation which would result if the maxim were utilized was contrary to the purpose of the statute. Similarly, in the present case it seems clear that the enactment was not intended to legally restrict the power of the legislature to appropriate money from the fund for any purpose. Such a restriction would

---

**4.** AS 37.07.030, which is part of the Executive Budget Act referred to in AS 19.65.060(b), requires that the legislature annually adopt a budget authorizing all proposed expenditures of the state government. Expenditures by the Marine Highway System from the Marine Highway System Fund are within this requirement.

amount to a dedication of the fund for a special purpose, and given the holding in *Alex*, the fund would be in violation of the anti-dedication clause. Alaska Statute 19.-65.060(b), however, states that nothing in the act "dedicates [Fund money] for a specific purpose." Therefore AS 19.65.080(a) is best read as not implying a prohibition on legislative appropriation of fund money to other than Marine Highway System purposes. This conclusion is bolstered by the rule of interpretation that statutes should be construed if reasonably possible so as to avoid a conclusion that they are unconstitutional. *State v. Fairbanks North Star Borough*, 736 P.2d 1140, 1142 (Alaska 1987).

■ Sonneman also argues that various comments made by legislators in the process of enactment of the act indicate an intent to use fund revenues only for marine highway purposes. *See* AS 19.65.050(b)(1), *infra* note 1. While there are many such comments,[5] there are also a number of statements that the fund would be legally unrestricted and could be appropriated by the legislature for any purpose.[6] As noted, the act expressly states that it does not dedicate money for a specific purpose. The mixed legislative history is insufficiently persuasive to require a construction of the act at variance with its apparent plain meaning. *See Alex*, 646 P.2d at 208–09 n. 4 ("the plainer the language, the more convincing contrary legislative history must be").

■ While the act as we construe it does not restrict the authority of the legislature to appropriate money from the fund, the act is more than merely a legislatively man-

dated system of accounting. It does restrict executive authority to seek appropriations from the fund. *See* AS 19.65.080(b). This restriction on DOTPF's authority to request the appropriation of money for capital improvements violates article IX, section 7.

One method of dedicating funds is to preclude the legislature from appropriating designated funds for any reason other than a designated purpose. Another less direct method would be to preclude agencies from requesting monies from designated funds or revenue sources. The constitutional clause prohibiting dedicated funds seeks to preserve an annual appropriation model which assumes that not only will the legislature remain free to appropriate all funds for any purpose on an annual basis, but that government departments will not be restricted in requesting funds from all sources. As the debates make clear, all departments were to be "in the same position" as competitors for funds with the need to "sell their viewpoint along with everyone else." 4 PACC 2364–67 (Jan. 17, 1956). We conclude therefore that the limitations on the ability of DOTPF to ask for funds from the Marine Highway System Fund expressed in AS 19.65.080(b) amount to a dedication in violation of article IX, section 7.

The question which follows is whether the entire act should be declared unconstitutional or whether AS 19.65.080(b) may be severed from the rest of the act.

■ The Alaska Statutes contain a general severability clause:

Any law heretofore or hereafter enacted by the Alaska legislature which lacks

---

**5.** The bill's prime sponsor testified that "[t]he intent of the bill is to allow the Marine Highway System to use the revenues it generates...." Sen. Jim Duncan, Senate Transp. Comm. Hearings on Senate Bill (SB) 428, Feb. 20, 1990, Legislative Storage and Information Retrieval System (STAIRS) No. STRA90022013 at 11. Chairman of the Senate Transportation Committee Lloyd Jones commented that he felt better about the fact that the legislature would be able to earmark the program receipts. Sen. Lloyd Jones, *id.* at 20. The House Finance Co–Chairman noted that the purpose of the legislation would be to create a restricted fund within the general fund. The restricted fund would origi-

nate from proceeds of the program receipts earned by the state ferry system in order to be used the following year. Rep. Ron Larson, House Fin. Comm. Hearings on House Bill (HB) 439 & SB 428, April 29, 1990, STAIRS No. HFIN90042912 at 4.

**6.** Sen. Jim Duncan, Senate Fin. Comm. Hearings on SB 428, March 8, 1990, STAIRS No. SFIN90030809 at 29; Alaska Marine Highway System Director Jim Ayers, *id.* at 19; Gov. Cowper's Transmittal Letter to Legislature, Jan. 24, 1990.

a severability clause shall be construed as though it contained the clause in the following language, "If any provision of this Act, or the application thereof to any person or circumstance is held invalid, the remainder of this Act and the application to other persons or circumstances shall not be affected thereby."

AS 01.10.030. This clause is said to create a weak presumption in favor of severability. *Lynden Transport, Inc. v. State,* 532 P.2d 700, 712 (Alaska 1975). "A provision will not be deemed severable 'unless it appears both that, standing alone, legal effect can be given to it and that the legislature intended the provision to stand, in case others included in the act and held bad should fall.'" *Id.* at 713 (quoting *Dorchy v. Kansas,* 264 U.S. 286, 290, 44 S.Ct. 323, 324, 68 L.Ed. 686 (1924). The key question is whether the portion remaining, once the offending portion of the statute is severed, is independent and complete in itself so that it may be presumed that the legislature would have enacted the valid parts without the invalid part. *Jefferson v. State,* 527 P.2d 37, 41 (Alaska 1974). In our view, the enactment in question clearly meets this test. After AS 19.65.080(b) is deleted, the remainder of the act still has the same meaning that it had with that subsection included. The deleted subsection is a minor part of the overall act and it is difficult to imagine any reason why the legislature which passed the act would not have also favored the act with .080(b) deleted.

For the foregoing reasons, we affirm the judgment in part, reverse the judgment in part, and remand for entry of a judgment declaring that AS 19.65.080(b) violates article IX, section 7 of the Alaska Constitution, but the remainder of the act does not.[7]

---

7. The other points raised on appeal by Sonneman, including his claim under 42 U.S.C. 1983, clearly lack merit.