*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA; OFFICE OF THE GOVERNOR, MIKE DUNLEAVY, in an official capacity; DEPARTMENT OF ADMINISTRATION, PAULA VRANA, in an official capacity; and DEPARTMENT OF EDUCATION & EARLY DEVELOPMENT, MICHAEL JOHNSON, in an official capacity, | ) ) ) ) ) ) ) ) ) ) | Supreme Court Nos. S-17666/17785<br><br>Superior Court No. 1JU-19-00753 CI<br><br>O P I N I O N<br><br>No. 7612 – August 12, 2022 |
| Appellants, | ) ) | |
| v. | ) ) | |
| THE ALASKA LEGISLATIVE COUNCIL and COALITION FOR EDUCATION EQUITY, | ) ) ) ) | |
| Appellees. | ) ) | |
| STATE OF ALASKA; OFFICE OF THE GOVERNOR, MIKE DUNLEAVY, in an official capacity; DEPARTMENT OF ADMINISTRATION, PAULA VRANA, in an official capacity; and DEPARTMENT OF EDUCATION & EARLY DEVELOPMENT, MICHAEL JOHNSON, in an official capacity, | ) ) ) ) ) ) ) ) ) ) | |
| Appellants, | ) ) | |



v. )
)
COALITION FOR EDUCATION )
EQUITY, )
)
Appellee. )
)

Appeals from the Superior Court of the State of Alaska, First Judicial District, Juneau, Daniel Schally, Judge.

Appearances: Dario Borghesan and Laura Fox, Senior Assistant Attorneys General, Anchorage, and Clyde "Ed" Sniffen, Jr., Acting Attorney General, Juneau, for Appellants. Megan A. Wallace and Hilary Martin, Alaska State Legislature, Legislative Affairs Agency, Division of Legal and Research Services, Juneau, for Appellee The Alaska Legislative Council. Howard S. Trickey and Peter A. Scully, Schwabe, Williamson & Wyatt, P.C., Anchorage, for Appellee Coalition for Education Equity. Scott Kendall, Holmes Weddle & Barcott, PC, Anchorage, for Amicus Curiae Alaska Council of School Administrators and Association of Alaska School Boards.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices, and Matthews, Senior Justice.* [Borghesan, Justice, not participating.]

MAASSEN, Justice.

## I. INTRODUCTION

The Alaska Legislature passed a bill in 2018 that appropriated money for public education spending for both the next fiscal year, FY2019, and the year after that,

---

\* Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

FY2020.  The second year's appropriation had a 2019 effective date.  Governor Mike Dunleavy took office in December 2018.  He disputed the constitutionality of the second year's appropriation — and the general practice known as forward funding — asserting that it violated the annual appropriations model established by the Alaska Constitution.

The Alaska Legislative Council, acting on behalf of the legislature, sued the governor, seeking a declaratory judgment that the governor violated his constitutional duties by failing to execute the appropriations and an injunction requiring him to do so. A nonprofit education advocacy group intervened in support of the appropriation bills and the practice of forward funding.  On cross-motions for summary judgment, the superior court decided that the appropriations were consistent with the legislature's duty to fund public education, that they did not violate any specific constitutional provision, and that the governor's refusal to disburse funds pursuant to the appropriations violated his duty to faithfully execute the laws.  The court awarded attorney's fees to the Legislative Council and the advocacy group as prevailing parties.  The governor appeals the court's grant of summary judgment and the award of attorney's fees to the advocacy group.

We conclude that a requirement that funds be appropriated annually is implied in the Alaska Constitution's text and was intended by the framers.  We therefore reverse the superior court's decision that the forward-funded appropriations are constitutional.  And because neither the Legislative Council nor the advocacy group is a prevailing party, we vacate the superior court's attorney's fees awards.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

In May 2018 the Thirtieth Alaska Legislature passed House Bill 287, which

appropriated funds for public education for the next two consecutive fiscal years,[1] FY2019 and FY2020. The act's provisions took effect on July 1, 2018, except for the FY2020 appropriations; they were given an effective date of July 1, 2019, more than a year after the bill's passage. To be clear, the legislature did not appropriate public education funds from the FY2019 general fund revenues to cover spending in both FY2019 and FY2020;[2] rather, it in effect appropriated public education funds from two successive years' general fund revenues to be spent in those two successive fiscal years.

This legislative strategy of "forward-funding" public education was intended to resolve a specific and ongoing problem. The legislature had typically passed the State's operating budget late in the legislative session (i.e. late spring),[3] giving Alaska's school districts little notice of how to budget for the upcoming school year. And a budget passed by the legislature remains subject to the governor's veto, adding to

---

[1]  *See* AS 37.05.920 (defining fiscal year as beginning on July 1 and ending on June 30 of the following year). Thus, for example, FY2020 is the period from July 1, 2019 to June 30, 2020.

[2]  Appropriating funds from the FY2019 general fund to cover education spending in both FY2019 and FY2020 would have been constitutionally permissible. This was the legislature's practice from 2010 through 2014. *See* Ch. 13, § 13(a), SLA 2010 (appropriating funds from the general fund to the public education fund); Ch. 41, § 26(n), SLA 2010 (same); Ch. 3, § 25(e), FSSLA 2011 (same); Ch. 15, § 26(f), SLA 2012 (same); Ch. 14, § 28(e), SLA 2013 (same); Ch. 16, § 28(c), SLA 2014 (same).

[3]  The Constitution requires that the legislature convene in late January and adjourn "no later than one hundred twenty consecutive calendar days from the date it convenes," with the possibility of a ten-day extension on a two-thirds vote of each house and special sessions at the call of the governor or two thirds of the legislators. Alaska Const. art. II, §§ 8, 9; *see also* AS 24.05.090 (setting start day as "third Tuesday in January"); AS 24.05.150(b) (shortening constitutionally-allowed session length by requiring legislature to adjourn "within 90 consecutive calendar days" from day it convenes).

the uncertainty. One of HB 287's sponsors, Representative Paul Seaton, described the dilemma by reference to recent history:

> In 2015, the [legislature] needed to come back in special session to pass a second operating budget that included education funding. In 2016, the state operating budget was passed by the legislature on May 31 and signed by the governor on June 28. Last session, the state operating budget did not pass the [l]egislature until June 22 and [was] signed by the [g]overnor on July 1. All this uncertainty for the funding amount forces school districts to draft multiple budgets. Anticipating low amounts requires districts to give termination notices (pink slips) to non-tenured teachers by May 15 and tenured teachers by the last day of school.[4]

According to Representative Seaton, "[a]n early, separate appropriation for education that has existing funding identified would prevent these problems and will allow school districts to finalize their budgets on time." The proposed bill was therefore "intended to pass separately from the regular operating budget and early in the session to prevent school districts from issuing mandatory teacher layoff notices." Support for HB 287 came from school boards and school districts across the state, as well as NEA–Alaska (a union representing 13,000 Alaska teachers and administrators), the Alaska Council of School Administrators, individual educators, school administrators, and parents, many of whom described their own frustrations with the uncertain education-funding process.

Then-Governor Bill Walker's legislative director asked the Department of Law for an opinion on the bill's constitutionality, and the attorney general advised that the forward-funding provisions were lawful: "Although not common, it is permissible

---

[4] Rep. Paul Seaton, Sponsor Statement of Proposed HB 287, 30th Leg., 1st Sess. (Jan. 25, 2018). The law actually requires that tenured teachers be notified of a "layoff or nonretention" in writing by May 15; non-tenured teachers must be notified no later than "the last day of the school term." AS 14.20.140(a), (b).

for the legislature to include in a budget bill appropriations [from future general funds] for future fiscal years."[5] The attorney general reasoned that "[t]hese appropriations do not bind a future legislature because a future legislature can always amend, reappropriate, or repeal the future appropriations."[6]

Governor Walker signed HB 287 into law on May 3, 2018, and it became SLA 2018, Ch. 6. The forward-funding provisions — Chapter 6, §§ 4, 5(c), and 5(d)[7]

---

[5] STATE OF ALASKA, DEP'T OF LAW, OP. ATT'Y GEN., HB 287: Appropriations: Pupil education and transportation (May 1, 2018).

[6] *Id.*

[7] Chapter 6, §§ 4-5, provide:

Sec. 4. DEPARTMENT OF EDUCATION AND EARLY DEVELOPMENT. The sum of $30,000,000 is appropriated from the general fund to the Department of Education and Early Development to be distributed as grants to school districts according to the average daily membership for each district adjusted under AS 14.17.410(b)(1)(A) - (D) for the fiscal year ending June 30, 2020.

Sec. 5. FUND CAPITALIZATION. (a) The amount necessary to fund the total amount for the fiscal year ending June 30, 2019, of state aid calculated under the public school funding formula under AS 14.17.410(b), estimated to be $1,189,677,400, is appropriated from the general fund to the public education fund (AS 14.17.300).

(b) The amount necessary, estimated to be $78,184,600, to fund transportation of students under AS 14.09.010 for the fiscal year ending June 30, 2019, is appropriated from the general fund to the public education fund (AS 14.17.300).

(c) The amount necessary to fund the total amount for the fiscal year ending June 30, 2020, of state aid calculated under the public school funding formula under AS 14.17.410(b) is

(continued...)

— appropriated two amounts from the general fund to the public education fund[8]: one "calculated under the public school funding formula under AS 14.17.410(b)" and the other in an "amount necessary to fund transportation of students under AS 14.09.010."[9] It also appropriated $30 million to the Department of Education and Early Development as grants to ensure funding for public schools and the transportation of students for FY2020.[10] A "Contingency" provision in Chapter 6, §§ 7-8, provided that the forward-funded appropriations did not take effect until July 1, 2019, and were "contingent on passage by the Thirtieth Alaska State Legislature and enactment into law of a version of Senate Bill 26" (a bill related to the amount of funds that may be drawn from the permanent fund earnings for state government).

Governor Mike Dunleavy was elected in November 2018. His initial budget — submitted to meet a statutory deadline — largely adopted his predecessor's numbers, including the forward-funded education appropriations for FY2020; it also

---

[7] (...continued)
appropriated from the general fund to the public education fund (AS 14.17.300).

(d) The amount necessary to fund transportation of students under AS 14.09.010 for the fiscal year ending June 30, 2020, is appropriated from the general fund to the public education fund (AS 14.17.300).

[8] The public education fund, created by statute in 2005, holds funds appropriated for education from the general fund. *See* AS 14.17.300(a). "Money appropriated to the fund does not lapse" and "may be expended only in aid of public schools and for centralized correspondence study programs . . . and for transportation of pupils." AS 14.17.300(b).

[9] Ch. 6, §§ 5(c), 5(d), SLA 2018.

[10] Ch. 6, § 4, SLA 2018.

proposed forward funding education for FY2021. But the governor's amended budget submitted two months later sought to reduce the education appropriations and repeal the forward-funding provisions. The new attorney general issued an opinion that reached a conclusion different from the Department of Law's advice on the same issue in 2018.[11] Citing Alaska's "well-established annual budgeting model" as shown by "[t]he Alaska Constitution, court decisions, and historical practice," the attorney general concluded that the legislative attempt to forward fund education expenditures violated the constitutional prohibition on dedicating revenues, the governor's right to strike or reduce appropriations by veto, and statutes governing the budget and appropriations process.[12]

The legislature did not make a new education appropriation for FY2020, instead relying on the previous year's forward funding for FY2020 while at the same time making another forward-funded appropriation for FY2021.[13] The governor, relying on the advice of his attorney general, asserted that there was no valid education appropriation for FY2020 absent further legislative action, and he encouraged the legislature to make a single-year appropriation.[14]

B.    Proceedings

In July 2019, without compromising their differences on the legality of

---

[11]    STATE OF ALASKA, DEP'T OF LAW, OP. ATT'Y GEN., FY20 Education appropriation (May 8, 2019), http://www.law.state.ak.us/pdf/opinions/opinions _2019/19-001_FY20-Education-appropriation.pdf.

[12]    *Id.*

[13]    *See* Ch. 1, §§ 33(i)-(j), FSSLA 2019 (effective July 1, 2020).

[14]    *See* Press Release, Office of Governor Mike Dunleavy, Failing to Fund Education in Budget Ignores Constitution (May 8, 2019), https://gov.alaska.gov/ newsroom/2019/05/08/governor-dunleavy-failing-to-fund-education-in-budget-ignores-constitution/.

forward funding, the governor and the legislature negotiated a stipulation that would ensure that public schools continued to be funded during FY2020. The stipulation provided monthly disbursements from the State's general fund to the public education fund so that Alaska's schools had money with which to operate while the underlying constitutional controversy was adjudicated.

The Alaska Legislative Council[15] then filed a complaint for declaratory and injunctive relief in superior court, along with a proposed order reflecting the parties' stipulation. The complaint alleged that Governor Dunleavy, then-Commissioner of Administration Kelly Tshibaka, and Commissioner of Education and Early Development Michael Johnson[16] failed to disburse the duly appropriated education funds for FY2020, a failure which the Council alleged would prevent public schools from operating during the coming school year. The complaint brought three claims for relief, one for each of the three appropriations made for FY2020 in § 4, § 5(c), and § 5(d) of Chapter 6, SLA 2018. The complaint alleged that the governor's failure to disburse the funds infringed on the legislature's mandate to maintain a system of public schools under article VII, section 1 of the Alaska Constitution and the legislature's power of appropriation under article IX, section 13; that it violated the separation of powers doctrine; and that it violated the governor's duty to faithfully execute the laws under article III, section 16. The superior court immediately signed the stipulated order so that education funding

---

[15] The Legislative Council is created by statute to serve "as a permanent interim committee and service agency of the legislature." AS 24.20.010. It is composed of equal numbers of senators and representatives, AS 24.20.020, and it has a number of listed powers, including in some instances the authority "to sue in the name of the legislature." AS 24.20.060(4)(F).

[16] We refer to the defendants collectively as "the governor" unless the context requires otherwise.

could continue during the litigation's pendency.[17]

In August 2019 the Coalition for Education Equity — identifying itself as an Anchorage-based non-profit that "champions a quality, equitable and adequate public education for every Alaska child through advocacy, policy development and legal action" — moved to intervene in the lawsuit. Over the governor's objection, the superior court allowed the Coalition to intervene (1) "in relation to the eventualities that may come to pass if the Defendants prevail in this suit;" and (2) "as part of the cross summary judgments that the present parties will be filing, addressing the issues already part of this case."[18]

The parties then moved for summary judgment. In a November 2019 order the superior court ruled in favor of the Legislative Council and the Coalition, deciding that the forward-funded appropriations at issue were consistent with the legislature's constitutional authority and the governor therefore had a constitutional duty to disburse them. The court declared that the defendants had "violated their duty to faithfully

---

[17]     The stipulated order meant that ultimately only the first of 12 installment payments to public schools was delayed, and then only briefly. The first payment was due by law on July 15, and the court signed the parties' stipulated order for continued funding on July 16. *See* AS 14.17.610(a) (requiring that "[o]n or before the 15th day of each of the first nine months of each fiscal year, one-twelfth of each district's state aid shall be distributed").

[18]     The Coalition sought "[a]n order declaring that [the appropriations were] a valid and constitutional exercise of the Legislature's authority to appropriate school funding, that [the governor] ha[d] no lawful authority to impound or otherwise refuse to disburse state funding in accordance therewith, and that [the governor's] failure to disburse the appropriations . . . violate[d] the Education Clause and Faithful Execution Clause of the Alaska Constitution." It also sought "[a] mandatory injunction directing [the governor] to faithfully execute [the appropriations] and to immediately release state funding in accordance therewith" and "an award of attorney's fees and costs."

execute the law by failing to execute the forward-funding appropriations at issue according to the statutory funding procedures." The court issued injunctions mandating disbursal of the funds "in accordance with the appropriations" and prohibiting the governor "from impounding or withholding money from the appropriations"; it also issued an order requiring the governor to provide the Legislative Council "an accounting of all the expenditures of money pursuant to the appropriations."

The Legislative Council and the Coalition moved for attorney's fees as prevailing parties. The court granted the motions, awarding attorney's fees to the Legislative Council under the partial reimbursement schedule of Alaska Civil Rule 82 and awarding full fees to the Coalition under the constitutional litigant provisions of AS 09.60.010(c).[19] The governor appealed the superior court's summary judgment decision and its award of attorney's fees to the Coalition under AS 09.60.010(c).[20]

## III. STANDARD OF REVIEW

"We review summary judgment rulings de novo . . . ."[21] We decide constitutional issues by "applying our independent judgment."[22] "In doing so we will adopt ' "a reasonable and practical interpretation in accordance with common sense"

---

[19] The statute provides, with some qualifications, that "[i]n a civil action or appeal concerning the establishment, protection, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska, the court . . . shall award . . . full reasonable attorney fees and costs to a claimant, who . . . has prevailed in asserting the right." AS 09.60.010(c)(1).

[20] The governor does not appeal the Rule 82 award of attorney's fees to the Legislative Council.

[21] *Wielechowski v. State*, 403 P.3d 1141, 1146 (Alaska 2017) (quoting *Seybert v. Alsworth*, 367 P.3d 32, 36 (Alaska 2016)).

[22] *Alaska Legis. Council v. Knowles*, 21 P.3d 367, 370 (Alaska 2001).

based upon "the plain meaning and purpose of the provision and the intent of the framers." ' "[23] "Moreover, because these are questions of law, we will consider precedent, reason, and policy."[24] We also "apply the independent judgment standard of review in considering whether the trial court applied the law correctly in awarding attorney's fees under AS 09.60.010(c)."[25]

## IV.    DISCUSSION

### A.    The Forward Funding At Issue Is Inconsistent With The Annual Budgeting Process Established By Article IX Of The Alaska Constitution.

"Our analysis of a constitutional provision begins with, and remains grounded in, the words of the provision itself."[26] "Constitutional provisions should be given a reasonable and practical interpretation in accordance with common sense. [We] . . . look to the plain meaning and purpose of the provision and the intent of the framers."[27] "We do not interpret constitutional provisions in a vacuum — the document is meant to be read as a whole with each section in harmony with the others,"[28] and "we have noted that often what is implied is as much a part of the constitution as what is

---

[23]    *Id.* (quoting *Cook v. Botelho*, 921 P.2d 1126, 1128-29 (Alaska 1996)).

[24]    *Id.*

[25]    *State v. Schmidt*, 323 P.3d 647, 655 (Alaska 2014).

[26]    *Wielechowski*, 403 P.3d at 1146 (quoting *Hickel v. Cowper*, 874 P.2d 922, 927 (Alaska 1994)).

[27]    *Hickel*, 874 P.2d at 926 (quoting *ARCO Alaska, Inc. v. State*, 824 P.2d 708, 710 (Alaska 1992)).

[28]    *Forrer v. State*, 471 P.3d 569, 585 (Alaska 2020).

expressed."[29]  Finally, when we are reviewing a legislative enactment, "constitutionality is presumed, and doubts are resolved in favor of constitutionality."[30]

The parties focus on four sections of the Alaska Constitution as most relevant to the general question of forward funding.  First, the Dedicated Funds Clause, article IX, section 7, provides that "[t]he proceeds of any state tax or license shall not be dedicated to any special purpose, except as provided in section 15 of this article or when required by the federal government for state participation in federal programs."

Second, the Budget Clause, article IX, section 12, provides:

> The governor shall submit to the legislature, at a time fixed by law, a budget for the next fiscal year setting forth all proposed expenditures and anticipated income of all departments, offices, and agencies of the State.  The governor, at the same time, shall submit a general appropriation bill to authorize the proposed expenditures, and a bill or bills covering recommendations in the budget for new or additional revenues.

Third, the Appropriations Clause, article IX, section 13 (actually entitled "Expenditures"), provides:

> No money shall be withdrawn from the treasury except in accordance with appropriations made by law.  No obligation for the payment of money shall be incurred except as authorized by law.  Unobligated appropriations outstanding at the end of the period of time specified by law shall be void.

Last, the Veto Clause, article II, section 15, provides that "[t]he governor may veto bills passed by the legislature" and "may, by veto, strike or reduce items in appropriation bills."

---

[29]     *Pub. Def. Agency v. Superior Ct.*, 534 P.2d 947, 950 (Alaska 1975).

[30]     *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 275 (Alaska 2001).

The Legislative Council argues that these clauses "impose[] no temporal limits on the legislature's power of appropriation" and that "[t]he governor has failed to allege a violation of an enumerated clause of the Alaska Constitution." It argues that the challenged appropriations were permissible under the Dedicated Funds Clause because the clause only prohibits the dedication of revenues from "[t]he proceeds of any state tax or license" or specific revenue streams, whereas the appropriations at issue in this case came from the general fund. The Legislative Council also contends that the governor's objections are based on the misconception that forward-funded appropriations, once approved, cannot be reconsidered by the next year's legislature. It argues that "the legislature has a long history of approving and then amending or repealing forward-funded education appropriations," reflecting the reality that forward funding does not meaningfully impair successive legislatures' ability to adjust their budget priorities in light of current circumstances.

As for the Budget Clause, the Legislative Council notes that it imposes temporal obligations only on the governor: "The governor shall submit . . . a budget for the next fiscal year" and "[t]he governor . . . shall submit a general appropriation bill."[31] It argues that the clause places no such constraints on the *legislature's* power of appropriation and that the limit placed on the governor "in no way binds the legislature or requires the legislature to enact appropriations consistent with the governor's request." It contends that the Appropriations Clause likewise contains no language expressly prohibiting forward-funded appropriations; the clause provides that no appropriations may be made "except as authorized by law."[32] The Legislative Council maintains that

---

[31] Alaska Const. art. IX, § 12.

[32] Alaska Const. art. IX § 13.

the "spirit of the appropriations clause" is also not violated because "even after passage of [the appropriations at issue], public education funding continued to be considered a part of the legislature's normal budget process."

Finally, with regard to the governor's veto power, the Legislative Council argues that the power "is not personal" to the governor who happens to be in office on a law's effective date; the power belongs to "the governor in office at the time the legislation is passed."[33] The Legislative Council observes that "governors are regularly required to enforce and execute laws they did not sign into law"; therefore, it argues, because Governor Walker had the opportunity to veto the forward-funded education appropriations and chose not to, the veto power was not circumvented — it was simply not exercised.

We acknowledge that none of the Constitution's budgetary clauses expressly prohibit forward funding. We reiterate, however, that "often what is implied is as much a part of the constitution as what is expressed."[34] Implicit in the budgetary clauses is a requirement that the budget be determined annually; when examined together, the budgetary clauses, the sources from which they were drawn, the underlying policies they were designed to promote, and our case law all support this conclusion.

The Budget Clause introduces the time frame in which the budgetary clauses of article IX operate: "the next fiscal year."[35] The governor's budget and the governor's general appropriation bill begin the process; the budget must set forth "all

---

[33]    We agree with the Legislative Council on this point. If the veto power were particular to each governor, similar disputes would arise each time an intervening election put in office a governor other than the one who approved the budget.

[34]    *Pub. Def. Agency*, 534 P.2d at 950.

[35]    Alaska Const. art. IX, § 12.

proposed expenditures and anticipated income of all departments, offices, and agencies of the State" for the next fiscal year.[36] The legislature is free to create its own budget in response, and its general appropriation bill may differ from that proposed by the governor.[37] But the governor may veto the bill or portions of it by line-item deletions or reductions.[38]

The Appropriations Clause reinforces this process by prohibiting any expenditures not "in accordance with appropriations made by law."[39] At the same time, the Dedicated Funds Clause "seeks to preserve an annual appropriation model" by ensuring that the legislature is "free to appropriate all funds for any purpose on an annual basis."[40] Together, these clauses "create a strong executive branch with 'a strong control on the purse strings' of the [S]tate"[41] and limit the legislature's power to impose current spending priorities on future governors and legislatures.[42]

---

[36]    *Id.*

[37]    *See id.* (providing that the governor will "submit" a budget to the legislature and "a bill or bills covering recommendations in the budget"); Alaska Const. art. II, § 15 (providing that the governor may veto items in appropriation bills).

[38]    Alaska Const. art. II, § 15.

[39]    Alaska Const. art. IX, § 13.

[40]    *Sonneman v. Hickel*, 836 P.2d 936, 940 (Alaska 1992).

[41]    *Thomas v. Rosen*, 569 P.2d 793, 795 (Alaska 1977) (quoting 3 Proceedings of the Alaska Constitutional Convention (PACC) 1740 (Jan. 11, 1956) (statement of Del. Steve McCutcheon)).

[42]    "It is a settled principle of public law that one legislature cannot bind another . . . ." 3 ALASKA STATEHOOD COMM'N, CONSTITUTIONAL STUDIES, pt. IX at 15 (1955).

A report prepared for the Constitutional Convention by expert consultants in public administration provides insight into the policies underlying the Constitution's budgetary clauses.[43] The report emphasizes the planning function of an executive budget, which requires the governor to gather whatever "information . . . is necessary for budget formulation from other elected officials as well as the legislature and judiciary."[44] The executive budget thus has the "important objective . . . of comprehensiveness . . . so that the financial plan of the state is not considered piecemeal. The legislature should be able to see at one time what the total financial needs and tax burden of the state are to be."[45] Earmarking, the report cautions, prevents "over-all planning of the fiscal program

---

[43]     *Id.* at 1-33 (entitled "State Finance: A staff paper prepared by Public Administration Service for the Delegates to the Alaska Constitutional Convention" [hereinafter State Finance report]). These staff papers "were prepared under the authority of the Alaska territorial legislature for use at the constitutional convention," "were mailed to all delegates before the convention convened and were available for use, and often referred to, in the proceedings." *State v. Alex*, 646 P.2d 203, 209 n.5 (Alaska 1982). We regularly rely on these staff papers as evidence of the framers' intent. *See, e.g.*, *Forrer v. State*, 471 P.3d 569, 574-76 (Alaska 2020) (citing State Finance report in discussing framers' intent in drafting art. IX, § 8, addressing state debt); *State v. Ketchikan Gateway Borough*, 366 P.3d 86, 92 & n.44 (Alaska 2016) (citing State Finance report as evidence of the framers' recognition of "the importance of preserving state control over state revenue"); *City of Fairbanks v. Fairbanks Convention & Visitors Bureau*, 818 P.2d 1153, 1158 (Alaska 1991) (citing State Finance report as evidence of "motivations behind the [Alaska Constitution's] ban on dedicated revenues"); *Alex*, 646 P.2d at 209 (citing State Finance report as evidence of framers' intent in drafting article IX, § 7).

[44]     ALASKA STATEHOOD COMM'N, *supra* note 42, at 25-26.

[45]     *Id.* at 26-27.

of the state" and "should be avoided at all costs."[46]  The report recommends that the legislature be free to change the budget submitted by the governor, subject "[o]f course" to "the governor's power to veto items whether in whole or in part."[47]

Although this language addresses primarily the executive's budgeting task, it illustrates the importance an annual budget held for the constitutional delegates.  The delegates envisioned an annual budget that comprehensively addresses the State's current needs and the resources currently available to meet those needs.  The clause counsels against piecemeal consideration and earmarked funds.  And while it specifies only the governor's responsibility, it envisions that the legislature, like the governor, should be able to view all the State's needs and resources at once, being free to change the budget as it sees fit subject to the governor's veto.

Necessarily implicit in this model is the idea that the governor's budget, and the legislative process in response to it, take place within the same time frame: "the next fiscal year," i.e. the year for which the governor has collected information on "all proposed expenditures and anticipated income."[48]  If the legislature appropriates funds from a future fiscal year's general fund revenues, it circumvents the planning function of the executive budget and undercuts an important aspect of the constitutional design: protecting the State's flexibility in the future to respond to then-present needs with then-present resources.  The advance dedication of future fiscal year revenues to a particular end takes from future governors and future legislatures the full measure of power and responsibility each is intended to have over the budgets generated during their respective

---

[46]     *Id.* at 30.

[47]     *Id.* at 31.

[48]     *See* Alaska Const. art. IX, § 12.

tenures.[49] While the legislature may have a history of approving and then amending or repealing forward-funded education appropriations, as the Legislative Council contends, it is easier to block a proposal in the first instance than to repeal or change it once it has been enacted. Blocking a proposal requires only a majority of one house of the legislature, or the governor's sustainable veto; reducing or repealing an appropriation that has already been enacted requires a majority of both houses and the governor's acquiescence.[50] These additional obstacles seem incompatible with the annual budgeting model our Constitution contemplates.

We have recognized this in past cases, in which we have repeatedly observed that the Dedicated Funds Clause, the Appropriations Clause, and the Veto Clause "[t]ogether . . . govern the legislature's and the governor's 'joint responsibility . . . to determine the State's spending priorities on an annual basis.' "[51] In *Sonneman v. Hickel*, for example, we noted that "[t]he constitutional clause prohibiting dedicated funds seeks to preserve an annual appropriation model which assumes that not only will the legislature remain free to appropriate all funds for any purpose on an annual basis,

---

[49] *See Sonneman v. Hickel*, 836 P.2d 936, 938 (Alaska 1992) ("The constitutional convention committee which drafted the prohibition on the dedication of funds commented that the reason for the prohibition is to preserve control of and responsibility for state spending in the legislature and the governor."); *see also State v. Ketchikan Gateway Borough*, 366 P.3d 86, 101 (Alaska 2016) ("[T]he constitutional delegates intentionally established a system in which both the legislature and the governor would consider how to spend state money each year.").

[50] *See* Alaska Const. art. II, § 14 ("No bill may become law without an affirmative vote of a majority of the membership of each house."); Alaska Const. art. II, § 15 (providing that governor may veto bills).

[51] *Ketchikan Gateway Borough*, 366 P.3d at 101 (second omission in original) (quoting *Simpson v. Murkowski*, 129 P.3d 435, 447 (Alaska 2006)).

but that government departments will not be restricted in requesting funds from all sources."[52] We recognized in *Southeast Alaska Conservation Council v. State*[53] that "the reach of the dedicated funds clause might be extended to statutes that, while not directly violating the clause by dedicating revenues, in some other way undercut the policies underlying the clause."[54]

Reading the relevant constitutional provisions together, and in light of the "purpose of the provision[s] and the intent of the framers,"[55] we conclude that the budget clauses contain an annual appropriation model that promotes comprehensive planning and budgeting flexibility. The forward-funded appropriations at issue are incompatible with this constitutional model.

**B.**     **Education Appropriations Are Subject To The Annual Appropriation Model That Governs All Legislative Budgeting**.

The Alaska Constitution's Public Education Clause, article VII, section 1, mandates the creation of a public school system: "The legislature shall by general law establish and maintain a system of public schools open to all children of the State, and may provide for other public educational institutions." We have repeatedly "recognized the dual aspect of [this] constitutional provision[:] It imposes a duty upon the state

---

[52]     836 P.2d at 940 (concluding that act restricting agency from seeking appropriations for capital improvements from particular fund violated dedicated funds clause).

[53]     202 P.3d 1162 (Alaska 2009).

[54]     *Id*. at 1170.

[55]     *See supra* note 29 and accompanying text.

legislature, and it confers upon Alaska school age children a right to education."[56]  The first version of the clause presented to the Constitutional Convention imposed this duty on "the state" rather than "the legislature."[57]  But the Committee on Style and Drafting recommended that the clause "pinpoint [the duty] to a particular division of the state government," and the provision was adopted in its current form, requiring that the establishment and maintenance of the public school system be specifically a legislative responsibility.[58]

This case therefore requires us to consider whether, as the superior court determined, the Constitution allows room for legislative flexibility — that is, deviation from the annual appropriation model — in situations like that presented here.  The Legislative Council argues that "[t]he need for flexibility in providing public education has been recognized by both the Alaska Supreme Court and the United States Supreme Court, each holding that given the 'complexity of the problems of financing and managing a statewide public school system . . . within the limits of rationality, the legislature's efforts to tackle the problems should be entitled to respect.' "[59]

But we must conclude that the legislature's constitutional duty to fund public education does not exempt the subject from the normal appropriation rules.  In

---

[56] *Hootch v. Alaska State-Operated Sch. Sys.*, 536 P.2d 793, 799 (Alaska 1975); *Breese v. Smith*, 501 P.2d 159, 167 (Alaska 1972) (stating that "article VII, section 1 . . . guarantees all children of Alaska a right to public education").

[57] *See Hootch*, 536 P.2d at 800-01 (quoting 6 PACC App. V at 68 (Dec. 15, 1955) (Committee Proposal No. 7)).

[58] *Id.* at 801.

[59] *See id.* at 803-04 (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 42 (1973)).

*State v. Alex*[60] we considered an equally specific constitutional mandate of legislative responsibility in the area of natural resources: "The legislature shall provide for the utilization, development, and conservation of all natural resources belonging to the State . . . for the maximum benefit of its people."[61] We rejected the argument that this directive authorized an otherwise impermissible dedication of funds.[62] In *Wielechowski v. State*,[63] though not dealing with an explicit constitutional directive to the legislature, we held that "[t]he legislature's use of Permanent Fund income is subject to normal appropriation and veto budgetary processes."[64] We declined to "create an anti-dedication clause exception that would swallow the rule," holding instead that "the Permanent Fund dividend program must compete for annual legislative funding just as other state programs."[65]

We see no textual justification for a different rule in the education context. And allowing this form of forward funding for education a year in advance would open the door for forward funding in other contexts and more years in advance, weakening the

---

[60]     646 P.2d 203 (Alaska 1982).

[61]     Alaska Const. art. VIII, § 2.

[62]     *Alex*, 646 P.2d at 210-11.

[63]     403 P.3d 1141 (Alaska 2017).

[64]     *Id.* at 1143, 1152. The constitutional provision at issue in *Wielechowski* provides, "At least twenty-five percent of all mineral lease rentals, royalties, royalty sale proceeds, federal mineral revenue sharing payments and bonuses received by the State shall be placed in a permanent fund . . . . All income from the permanent fund shall be deposited in the general fund unless otherwise provided by law." Alaska Const. art. IX, § 15.

[65]     *Wielechowski*, 403 P.3d at 1152.

annual budgeting process intended by the Constitution's framers.[66]

We acknowledge the importance of providing school districts with advance notice of their annual budget, and we agree that the Constitution may allow for some degree of creativity to ensure this is accomplished. But there are avenues that do not raise constitutional concerns. For example, as was the practice from 2010 to 2014, the legislature may appropriate public education funds from the upcoming fiscal year to cover expenditures in the subsequent fiscal year.[67] Unlike the forward funding practice at issue here, this would ensure that education funds were set aside well in advance of distribution—giving school districts time to plan their budgets—without appropriating funds from future budgetary cycles. Alternatively, the legislature may prioritize education funding earlier in the legislative session to allow school districts more time to prepare for the upcoming school year.

Regardless, because education appropriations are subject to the same annual appropriation model that governs all legislative budgeting, the forward-funded education

---

[66] *See Sonneman v. Hickel*, 836 P.2d 936, 938 ("But if allocation is permitted for one interest the denial of it to another is difficult, and the more special funds are set up the more difficult it becomes to deny other requests until the point is reached where neither the governor nor the legislature has any real control over the finances of the state." (quoting 6 PACC App. V at 111 (Dec. 16, 1955))).

[67] *See* Ch. 13, § 13(a), SLA 2010 (appropriating upcoming fiscal year general revenues to statutory public education fund for use in upcoming and subsequent fiscal years); Ch. 41, § 26(n), SLA 2010 (same); Ch. 3, § 25(e), FSSLA 2011 (same); Ch. 15, § 26(f), SLA 2012 (same); Ch. 14, § 28(e), SLA 2013 (same); Ch. 16, § 28(c), SLA 2014 (same). The legislature adopted this practice again in its 2022 appropriations bill. HB 281§ 1, 16, 32d Leg., 1st Sess. (2022).

appropriations at issue here are unconstitutional.[68]

C. **Because Neither The Legislative Council Nor The Coalition Remains A Prevailing Party, We Vacate The Superior Court's Attorney's Fees Awards.**

Because we reverse the superior court's determination that the appropriations are constitutional, neither the Legislative Council nor the Coalition remains a prevailing party in the superior court litigation. We therefore vacate the attorney's fees awards.

## V. CONCLUSION

We REVERSE the superior court's order on summary judgment, VACATE the final judgment, and VACATE the attorney's fees awards.

---

[68] The Legislative Council argues that regardless of the appropriations' constitutionality, the governor violated his duty to faithfully execute the laws by declining to execute the appropriations on the advice of his attorney general. We reiterate our earlier holding that an attorney general's opinion is not alone sufficient to establish that a law is "clearly unconstitutional." *O'Callaghan v. Coghill*, 888 P.2d 1302, 1303 (Alaska 1995). Here, however, the governor and the Legislative Council negotiated a stipulation by which the challenged law would be followed while the constitutional issues were litigated, and the superior court approved the stipulation just a day after the appropriation's first payout was due. Under these unique circumstances we conclude that if there was a failure to faithfully execute the laws it was necessarily *de minimis* and does not merit further discussion.