*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| RONALD T. WEST,<br><br>             Appellant,<br><br>    v.<br><br>STATE OF ALASKA,<br><br>             Appellee. | Supreme Court No. S-18458<br><br>Superior Court No. 3AN-21-06865 CI<br><br>O P I N I O N<br><br>No. 7727 – October 17, 2024 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Dani Crosby, Judge.

Appearances: Ronald T. West, Anchorage, Appellant. Cheryl R. Brooking and Maria Smilde, Assistant Attorneys General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee.

Before: Maassen, Chief Justice, and Carney, Henderson, and Pate, Justices. [Borghesan, Justice, not participating.]

HENDERSON, Justice.

## I.    INTRODUCTION

At issue in this matter is whether the State's statutory definition of sustained yield violates the Alaska Constitution's sustained yield provision. A plaintiff sued the State, arguing primarily that the definition of sustained yield under AS 16.05.255(k) violates article VIII, section 4 of the Alaska Constitution because the legislature lacked authority to define sustained yield and because the statutory definition

contradicts the constitutional provision.  The parties filed cross-motions for summary judgment, and the superior court granted summary judgment in favor of the State, concluding that AS 16.05.255(k)'s definition of sustained yield complies with the Constitution.  Plaintiff appeals.  We affirm the superior court's judgment.

## II.  ALASKA'S SUSTAINED YIELD PROVISIONS

Article VIII of the Alaska Constitution sets forth fundamental principles of natural resources and wildlife management in this state.[1]  When this article was approved it was both the most comprehensive natural resource management provision in a state constitution[2] and the first provision to incorporate sustained yield principles into a state constitution.[3]

The Alaska Constitution's sustained yield clause, contained in article VIII, section 4, states that "[f]ish, forests, wildlife, grasslands, and all other replenishable resources belonging to the State shall be utilized, developed, and maintained on the sustained yield principle, subject to preferences among beneficial uses."

---

[1]    *See generally Sagoonick v. State*, 503 P.3d 777, 782-85 (Alaska 2022) (describing origins of article VIII of the Alaska Constitution).

[2]    GORDON HARRISON, ALASKA LEGISLATIVE AFFAIRS AGENCY, ALASKA'S CONSTITUTION:  A CITIZEN'S GUIDE 129 (5th ed. 2021), http://akleg.gov/docs/pdf/citizensguide.pdf ("In drafting [article VIII], delegates were unable to refer to other state constitutions or the Model State Constitution for ideas and guidance, as none of them dealt with natural resource policy as broadly as the Alaskans thought necessary. At the time of Alaska's constitutional convention, only the Hawaii Constitution addressed natural resource policy in a separate article, and that article was brief." (emphasis omitted)). *But cf.* William L. Iggiagruk Hensley & John Sky Starkey, *Alaska Native Perspectives on the Alaska Constitution*, 35 ALASKA L. REV. 129, 129-37 (2018) (claiming if there was greater Alaska Native representation at the Constitutional Convention then there may have been greater protections for Alaska Native rights under article VIII).

[3]    GERALD A. MCBEATH, THE ALASKA STATE CONSTITUTION:  A REFERENCE GUIDE 146 (1997).

Through AS 16.05.255, the State has implemented the Constitution's sustained yield clause.[4] In particular, the statute defines "sustained yield" as "the achievement and maintenance in perpetuity of the ability to support a high level of human harvest of game, subject to preferences among beneficial uses, on an annual or periodic basis."[5] The statute defines "intensive management" as the

> management of an identified big game prey population consistent with sustained yield through active management measures to enhance, extend, and develop the population to maintain high levels or provide for higher levels of human harvest, including control of predation and prescribed or planned use of fire and other habitat improvement techniques.[6]

We consider West's arguments in light of these statutory and constitutional provisions.

## III. FACTS AND PROCEEDINGS

### A. Complaint

West filed suit in 2021, raising a variety of challenges to AS 16.05.255. West challenged the constitutionality of AS 16.05.255[7] as "an illegal amendment of Article VIII, Section Four of the Alaska Constitution" because he contended it removed predators from management for sustained yield. He argued that AS 16.05.255 changed the meaning of and "violat[ed] Alaska's Public Trust." He further urged that the statute directed the Alaska Department of Fish and Game and Board of Game with "mandatory language" that required the killing of predators "using barbaric methods," and that it

---

**4** *See generally West v. State, Bd. of Game* (*West I*), 248 P.3d 689, 692 (Alaska 2010) (detailing history of Alaska's statutory and constitutional sustained yield provisions).

**5** AS 16.05.255(k)(4).

**6** AS 16.05.255(k)(5).

**7** Throughout his early filings West cited to statutes no longer in force or non-existent statutes. West's later filings indicate he challenges AS 16.05.255(k).

created an "exclusive use of predators for hunters and trappers." He also claimed that the statute required the State to "abandon science."

West sought declaratory and injunctive relief. He requested that the court declare that the statute and underlying regulations are unconstitutional, violate the State's public trust obligation, and violate separation of powers principles. He also requested that the court enjoin the State from enforcing AS 16.05.255 and direct the State to "manage wildlife in each [Game Management Unit] for sustained yield."

B.     **Motion Work And Appeal**

West moved for summary judgment, primarily arguing that AS 16.05.255 violates the Alaska Constitution. The State opposed West's summary judgment motion, and also moved to dismiss the case for failure to state a claim. The State argued the court should dismiss the claim under res judicata and collateral estoppel because it contended that we resolved West's claims in our 2010 decision in *West I*.[8] In his opposition to the motion to dismiss, West urged that this case is about the constitutionality of AS 16.05.255, which was not at issue in *West I*.

The superior court held oral argument on the State's motion to dismiss. Among other points, the State argued that there is no definition of sustained yield in the Alaska Constitution that the statute could illegally amend, and that West's claims were barred by res judicata and collateral estoppel. West in turn argued that AS 16.05.255 violates the Alaska Constitution and that this claim was not precluded by prior litigation. The court noted his complaint contained a "claims for relief" section but identified no clear cause of action. The court therefore asked West to clarify his cause

---

        **8**     248 P.3d 689. In *West I* conservation advocacy groups and West challenged a 2006 state predator control plan as violating sustained yield under AS 16.05.255 and the Alaska Constitution. *Id.* at 693. We concluded that sustained yield in AS 16.05.255 and the Constitution applies to predators, but that the conservation groups and West failed to prove the 2006 plans violated principles of sustained yield. *Id.* at 695-701.

of action. West clarified that his only claim was that AS 16.05.255 violates the Alaska Constitution because it defines sustained yield in a manner inconsistent with the Constitution.

The court denied the State's motion to dismiss. It determined that collateral estoppel did not apply because our decision in *West I* "did not expressly hold that the statutory provision of sustained yield in AS 16.05.255 is constitutional" and did not determine "whether the State legislature had the authority to enact a definition of sustained yield." The court similarly decided that res judicata did not apply because West's clarified cause of action did not "require similar proof to the claims litigated in [*West I*]."

Prior to the court's ruling on the motion to dismiss, West filed an amended motion for summary judgment. The motion was largely similar to West's earlier motion, except that it contained an additional request for the court to declare that AS 16.05.255 illegally amends the Alaska Constitution. The State opposed and filed a cross-motion for summary judgment. Following oral argument the superior court granted the State's cross-motion, concluding as a matter of law that the State legislature did not exceed its constitutional authority in defining sustained yield and that AS 16.05.255 did not violate the Alaska Constitution.

West appeals, posing a facial challenge to AS 16.05.255. He argues first that the legislature lacked authority to define sustained yield in statute, and second that the statutory definition of sustained yield violates the Alaska Constitution.[9]

---

[9] During oral argument West clarified that his appeal is a facial challenge to the constitutionality of AS 16.05.255. His briefing appears to raise other arguments; however, we do not address any other arguments because they are either barred by collateral estoppel or are not preserved for appeal. *See Sykes v. Lawless*, 474 P.3d 636, 643 (Alaska 2020) (describing elements of collateral estoppel); *McCavit v. Lacher*, 447 P.3d 726, 731 (Alaska 2019) (holding we generally decline to review issue not presented below unless claim may constitute plain error "or the issues (1) do not depend

## IV.  STANDARD OF REVIEW

"We review a grant of summary judgment de novo, 'affirming if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law.' "[10]  "We use our independent judgment to review matters of constitutional or statutory interpretation."[11]  "We uphold a statute against a facial constitutional challenge if despite . . . occasional problems it might create in its application to specific cases, [it] has a plainly legitimate sweep." [12]

## V.  DISCUSSION

The party raising a constitutional challenge "bears the burden to establish the constitutional violation."[13]  In interpreting the Alaska Constitution "we will adopt a reasonable and practical interpretation in accordance with common sense based upon the plain meaning and purpose of the provision and the intent of the framers.  Moreover,

---

upon new facts, (2) are closely related to other arguments at trial, and (3) could have been gleaned from the pleadings" (quoting *Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 351 (Alaska 2001))).

[10]  *Sulzbach v. City & Borough of Sitka*, 517 P.3d 7, 13 (Alaska 2022) (quoting *Kelly v. Mun. of Anchorage*, 270 P.3d 801, 803 (Alaska 2012)).

[11]  *State v. Planned Parenthood of the Great Nw.*, 436 P.3d 984, 991 (Alaska 2019) (citing *Premera Blue Cross v. State, Dep't of Com., Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1115 (Alaska 2007)).

[12]  *Kohlhaas v. State*, 518 P.3d 1095, 1104 (Alaska 2022) (first alteration added) (quoting *Planned Parenthood of the Great Nw.*, 436 P.3d at 991-92).  We acknowledge that we have applied the facial challenge standard differently in certain cases, but we assume for the purposes of this decision that the more lenient facial challenge standard applies.  *Compare id., with Ass'n of Vill. Council Presidents Reg'l Hous. Auth. v. Mael*, 507 P.3d 963, 982 (Alaska 2022) (describing facial challenge as meaning "that there is no set of circumstances under which the statute can be applied consistent with the requirements of the constitution" (quoting *State v. ACLU of Alaska*, 204 P.3d 364, 372 (Alaska 2009))).  *See also State, Dep't of Educ. & Early Dev. v. Alexander*, Nos. 19083/19113, at *3 (Alaska Supreme Court Order, Jun. 28, 2024).

[13]  *Kohlhaas*, 518 P.3d at 1104.

because these are questions of law, we will consider precedent, reason, and policy."[14] "Legislative history and the historical context, including events preceding ratification, help define the constitution."[15] "[W]hen constitutional issues are raised, [we] ha[ve] a duty to construe a statute, where reasonable, to avoid dangers of unconstitutionality. Rather than strike a statute down, we will employ a narrowing construction, if one is reasonably possible."[16]

West argues that the legislature lacks the authority to define sustained yield, and that the statutory definition is unconstitutional. He claims AS 16.05.255(k)'s statutory definition of sustained yield is different than the sustained yield definition in the glossary used by the Alaska Constitutional Convention delegates when writing article VIII, section 4,[17] and that the statute contradicts and attempts to improperly amend the Constitution. West emphasizes that we previously referenced the glossary in *West I*[18] and maintains that we must therefore have recognized the glossary definition as determinative. He also claims that the statutory definition of sustained yield fails to provide for the scientific management and conservation of resources that were intended by the framers of the Constitution.

---

[14] *State v. Alaska Legis. Council*, 515 P.3d 117, 123 (Alaska 2022) (internal quotation marks omitted) (quoting *Alaska Legis. Council v. Knowles*, 21 P.3d 367, 370 (Alaska 2001)).

[15] *Wielechowski v. State*, 403 P.3d 1141, 1147 (Alaska 2017) (quoting *State v. Ketchikan Gateway Borough*, 366 P.3d 86, 90 (Alaska 2016)).

[16] *Kohlhaas*, 518 P.3d at 1104 (first alteration in original) (quoting *ACLU of Alaska*, 204 P.3d at 373).

[17] The Resources Committee of the Constitutional Convention developed a glossary for delegates to consider in developing the natural resources sections of the Alaska Constitution, but this glossary was not incorporated into the Alaska Constitution. COMM. ON RES., PAPERS OF THE ALASKA CONST. CONVENTION, FOLDER 210, TERMS (1955) https://www.akleg.gov/pdf/billfiles/ConstitutionalConvention/Folder%20210.pdf.

[18] 248 P.3d 689, 695 (Alaska 2010).

We disagree. The plain meaning of the Alaska Constitution's sustained yield provision, as well as the framers' intent and precedent, all reinforce the legislature's authority to define sustained yield in statute,[19] as well as the statute's compliance with the Alaska Constitution.

## A.    Plain Meaning

The plain meaning of the statutory and constitutional sustained yield provisions supports the legislature's lawmaking authority in this area and the constitutionality of the statute.

Article VIII, section 4 of the Alaska Constitution states that "[f]ish, forests, wildlife, grasslands, and all other replenishable resources belonging to the State shall be utilized, developed, and maintained on the sustained yield principle, subject to preferences among beneficial uses." Looking to other sections of the Alaska Constitution gives context to the role of the legislature in furthering the sustained yield principle. Article II, section 1 delegates lawmaking powers to the legislature. And article VIII, section 2 states, "The legislature shall provide for the utilization, development, and conservation of all natural resources belonging to the State, including land and waters, for the maximum benefit of its people." These three sections together make clear that the legislature has authority to enact statutes such as AS 16.05.255 in order to manage the State's natural resources consistent with the sustained yield principle.

Considering more particularly whether AS 16.05.255 is consistent with the Constitution's sustained yield principle, we observe that although the text of article VIII, section 4 and AS 16.05.255(k) do not perfectly mirror each other, they contain

---

**19**    The State claims "this Court's precedent assumes that the legislature has authority to refine the meaning of constitutional language by passing statutes." We do not recognize a broad authority of the legislature to define the meaning of terms in the Constitution, but conclude here that the legislature had authority to define sustained yield in statute to effectuate the sustained yield principle in the Constitution.

similar language and express similar ideas about sustained yield. Both the statute and the Constitution contemplate management of natural resources such that those resources are maintained and may be enjoyed in perpetuity.[20] And both the statute and the Constitution acknowledge that the achievement and maintenance of "sustained yield" are "subject to preferences among beneficial uses."[21] Thus the statutory and constitutional text both broadly reflect congruous sentiments regarding sustained yield.

And while AS 16.05.255(k) reflects a more specific sustained yield policy goal or preference than that contained in the Constitution, the Constitution specifically anticipates and allows for such preferences.[22] Alaska Statute 16.05.255(k)(5)'s definition of sustained yield includes a preference for human harvest, stating sustained yield involves management to "support a high level of human harvest of game, subject to preferences among beneficial uses." But the statute's expression of a more specific sustained yield goal or preference is consistent with the flexible Constitutional language.[23] It is also consistent with the legislature's constitutional responsibility to provide for the utilization, development, and conservation of the natural resources of the State for the maximum benefit of its people. That is, the Constitution anticipates that the legislature will distill the very broad sustained yield principle into specific laws that shape the management of resources, and incorporate a range of preferences about how to maintain resources in perpetuity and what is of maximum benefit to the people of this state.

---

[20]     *Compare* Alaska Const. art. VIII, §4, *with* AS 16.05.255(k)(5).

[21]     *Compare* Alaska Const. art. VIII, §4, *with* AS 16.05.255(k)(5).

[22]     *Compare* Alaska Const. art. VIII, §4, *with* AS 16.05.255(k)(1)-(5).

[23]     *Compare* Alaska Const. art. VIII, §4, *with* AS 16.05.255(k)(5); *see also* *Native Vill. of Elim v. State*, 990 P.2d 1, 7-8 (Alaska 1999) (observing "flexibility" of Constitutional sustained yield requirement).

Additionally, West's argument that AS 16.05.255(k) somehow requires the abandonment of science, is without merit.[24] Although AS 16.05.255(k) does not in itself contain the word "science," this does not mean that the statutory subsection either requires or even suggests the abandonment of science in managing for sustained yield.[25]

## B.    Intent Of The Framers

Both historical context and the framers' intent in developing article VIII, section 4 further support the constitutionality of the statute.

The proceedings of the Alaska Constitutional Convention reinforce the idea that sustained yield was meant to be interpreted broadly and that it would be within the legislature's purview to more particularly implement resource management principles consistent with the broad sustained yield principle. The Resources Committee of the Constitutional Convention provided the delegates a glossary that included a definition of sustained yield:

> As to forests, timber volume, rate of growth, and acreage of timber type can be determined with some degree of accuracy. For fish, for wildlife, and for some other replenishable resources such as huckleberries, as an example, it is difficult or even impossible to measure accurately the factors by which a calculated sustained yield could be determined. Yet the term "sustained yield principle" is used in connection with management of such resources. When so used it denotes conscious application insofar as practicable of principles of management intended to sustain the yield of the resource being managed. That

---

[24]    At oral argument West clarified he challenges the constitutionality of AS 16.05.255(k) and is not challenging any specific management plan or decision, so we do not address any claims related to the use of science, or lack thereof, in specific management plans.

[25]    We also observe that the State acknowledges that it "uses science to meet its constitutional mandates in Article VIII."

broad meaning is the meaning of the term as used in the Article.[26]

This glossary definition emphasized the "broad meaning" of sustained yield and the importance of "conscious application" of principles of management.[27] The intentionally broad nature of sustained yield as a concept suggests that there must be some flexibility in implementing the principle. Additionally, the glossary's discussion of managing resources in a manner intended to sustain the yield of those resources aligns with AS 16.05.255(k)'s statutory provisions for intensive management consistent with sustained yield.[28] The glossary definition is not identical to the statutory definition of sustained yield. Nevertheless, the glossary definition encompasses, and is consistent with, AS 16.05.255(k)'s definition of sustained yield and supports the statute's constitutionality.

Delegate Riley, representing the Natural Resources Committee at the Constitutional Convention, explained that the Natural Resources Committee used the glossary definition in drafting article VIII, section 4.[29] However, when asked whether defining the sustained yield program with regard to fisheries would be delegated to the legislature, Delegate Riley confirmed that effectuating sustained yield programs would indeed be delegated to the legislature.[30] Riley explained to the Convention that the Natural Resources Committee "ha[d] in mind no narrow definition of 'sustained yield,' as is used, for example, in forestry, but the broad premise that insofar as possible a principle of sustained yield shall be used with respect to administration of those

---

[26] COMM. ON RES., PAPERS OF THE ALASKA CONST. CONVENTION, FOLDER 210, TERMS (1955).

[27] *Id.*

[28] *See* AS 16.05.255(k)(4).

[29] 4 Proceedings of the Alaska Constitutional Convention (PACC) 2457 (Jan. 17, 1956) (statement of Del. Burke Riley).

[30] *Id.*

resources which are susceptible of sustained yield, and where it is desirable."[31]   The Convention proceedings thus reflect some intent that the legislature would implement what is a broad principle of sustained yield.

Constitutional Convention delegates prepared a "Report to the People of Alaska" before the ratification vote that discusses sustained yield.[32]  In this report the delegates explained:

> The [natural resources] [A]rticle's primary purpose is to balance maximum use of natural resources with their continued availability to future generations.  In keeping with that purpose, all replenishable resources are to be administered, insofar as practicable, on the sustained yield principle.   This includes fish, forests, wildlife, and grasslands, among others.[33]

This discussion of sustained yield aligns with AS 16.05.255(k)'s definition.  It focuses in part on "maximum use of natural resources,"[34] a concept similar to the statute's emphasis on maintaining populations for "high level of human harvest of game."[35] Both the Report to the People and the statutory definition of sustained yield also emphasize ensuring that natural resources remain for future generations.  The report explicitly states the goal of managing resources for "continued availability to future generations"[36] and the statute describes this as "maintenance in perpetuity."[37]  These

---

[31]     *Id.* at 2451.

[32]     THE ALASKA CONSTITUTIONAL CONVENTION, PROPOSED CONSTITUTION FOR THE STATE OF ALASKA:  A REPORT TO THE PEOPLE OF ALASKA (1956).

[33]     *Id.*

[34]     *Id.*

[35]     AS 16.05.255(k)(5).

[36]     THE ALASKA CONSTITUTIONAL CONVENTION, PROPOSED CONSTITUTION FOR THE STATE OF ALASKA: A REPORT TO THE PEOPLE OF ALASKA (1956).

[37]     AS 16.05.255(k)(5).

consistencies between the report and the statute further support the statute's consistency with the Constitution.

West argues that when AS 16.05.255(k) was enacted in 1994, there was substantial public opposition, and Lieutenant Governor John B. Coghill, who had served as a Constitutional Convention delegate, wrote that sustained yield had already been defined in the glossary used by the delegates. However, Coghill's comments in 1994 largely support the legislature's ability to define sustained yield and the definition in AS 16.05.255(k).[38] Coghill referenced the glossary definition of sustained yield and maintained that "the meaning of 'sustained yield' was clear when the Alaska constitution was drafted."[39] But he insisted the clear meaning of sustained yield "was for replenishable resources to provide a high or maximum sustained level of consumptive utilization for humans."[40] This is in line with the definition of sustained yield provided in AS 16.05.255(k). He also explained that "[t]he Constitution directs the legislature to provide citizens the opportunity to utilize and develop our resources."[41] These comments support the framers' intent to delegate sustained yield management authority to the legislature, as well as the consistency between the statutory definition of sustained yield and the sustained yield principle stated in the Constitution.

The delegates' discussion of sustained yield during the Constitutional Convention and the surrounding historical context support the broad nature of the

---

[38] *See* John B. Coghill, Comment Letter on Committee Substitute for Senate Bill (C.S.S.B.) 77, 18th Leg., 2d Sess. (1994), *"Sustained Yield": Alaska's Constitutional Mandate for Action* (Jan. 28, 1994).

[39] *Id.* at 2-4.

[40] *Id.* at 2.

[41] *Id.* at 8.

sustained yield principle, the legislature's authority in this area, and the consistency between AS 16.05.255 and article VIII, section 4 of the Constitution.

## C. Relevant Precedent

Consistent with the language of article VIII, section 4, we have interpreted the sustained yield clause as a broad concept and decided the State has discretion in establishing management priorities.[42] Our precedent thus reinforces the legislature's ability to define the contours of sustained yield as it has in AS 16.05.255(k).

We have cited to the glossary from the Constitutional Convention in interpreting sustained yield,[43] but contrary to West's argument, we have not held that the glossary is part of the constitutional text, and we certainly have not suggested that the glossary prohibits separate statutory definitions of the included terms. In interpreting the Alaska Constitution we consider the intent of the framers.[44] Consistent with the above discussion of the framers' intent, we have cited the glossary in our precedent so as to better understand what the framers contemplated or intended in using

---

[42]     West cites our decision in *Bess v. Ulmer*, 985 P.2d 979 (Alaska 1999), to argue that AS 16.05.255 constitutes an illegal constitutional amendment. But our decision in *Bess* does not apply here, where the statutory provision at issue does not amend or contradict the Constitution. *Cf. id.* at 981, 987.

[43]     *See Sitka Tribe of Alaska v. State, Dep't of Fish & Game*, 540 P.3d 893, 900 (Alaska 2023) (citing COMM. ON RES., PAPERS OF THE ALASKA CONST. CONVENTION, FOLDER 210, TERMS (1955)); *Sagoonick v. State*, 503 P.3d 777, 783 n.10 (Alaska 2022) (citing same); *Cook Inlet Fisherman's Fund v. State, Dep't of Fish & Game*, 357 P.3d 789, 792 n.2 (Alaska 2015) (quoting *West I*, 248 P.3d 689, 695 (Alaska 2010)); *West I*, 248 P.3d at 695 (quoting COMM. ON RES., PAPERS OF THE ALASKA CONST. CONVENTION, FOLDER 210, TERMS (1955)); *Native Vill. of Elim v. State*, 990 P.2d 1, 7-8 (Alaska 1999) (quoting same).

[44]     *Hootch v. Alaska State-Operated Sch. Sys.*, 536 P.2d 793, 800 (Alaska 1975) ("While prior practice and the framers' purposes are not necessarily conclusive, an historical perspective is essential to an enlightened contemporary interpretation of our constitution.").

certain language within the Constitution.[45]  The glossary does not, however, preclude the legislature from passing a statute operationally defining sustained yield.

In fact our precedent reinforces the legislature's discretion to define sustained yield in statute, as well as AS 16.05.255's constitutionality.  In *Native Village of Elim v. State*, for example, we analyzed the sustained yield clause in the Constitution by looking to the intent of the delegates of the Constitutional Convention, and we concluded that "the primary emphasis of the framers' discussions and the glossary's definition of sustained yield is on the flexibility of the sustained yield requirement and its status as a guiding principle rather than a concrete, predefined process."[46]  We decided that "[t]he plain language of the provision requires resource managers to apply sustained yield principles; it does not mandate the use of a predetermined formula, quantitative or qualitative."[47]  We determined that the Board of Fisheries did not "abuse[] its considerable discretion in developing a sustained yield policy" as promulgated in a regulation.[48]

Further, in *West I*, we interpreted the Constitution's sustained yield clause and AS 16.05.255's sustained yield provisions, concluding they both required management of predator populations for sustained yield and allowed the state to determine how to balance predator and prey populations in its management decisions.[49]

---

[45]     *See* cases cited *supra* note 43.

[46]     *Native Vill. of Elim*, 990 P.2d at 7-8 (analyzing proceedings of the Constitutional Convention and glossary used by delegates (first citing 4 PACC 2456-57 (Jan. 17, 1956); and then quoting COMM. ON RES., PAPERS OF THE ALASKA CONST. CONVENTION, FOLDER 210, TERMS (1955))).

[47]     *Id.* at 7.

[48]     *Id.* at 8-9.

[49]     *West I*, 248 P.3d 689, 697-98 (Alaska 2010).  We do not disturb our decision that the sustained yield clause in statute and in the Constitution require the state to manage both predator and prey populations for sustained yield.  *Id.* at 695-99.

We looked to the glossary definition of sustained yield as indicating that sustained yield has a "broad meaning."[50] We analyzed the text of the Constitution's sustained yield clause, concluding that the words " 'subject to preferences among beneficial uses' suggest[] that the legislature and the Board have some discretion to establish management priorities for Alaska's wildlife."[51] We did not determine the constitutionality of AS 16.05.255, but noted the consistency between AS 16.05.255 and article VIII, section 4.[52]

In *Sagoonick v. State*, we considered claims that the State had violated constitutional natural resources provisions and constitutional rights in the context of requests for declaratory and injunctive relief.[53] We "recognize[d] that Article VIII is not a complete delegation of power to the legislature."[54] We held that the Constitutional Convention delegates designed article VIII, including the sustained yield clause, to create a broad framework for natural resource management "[r]ather than developing a detailed constitutional code."[55] We determined that "[a]rticle VIII, sections 1 and 2 of the Alaska Constitution express Alaska's resource development policy and direct the legislature to implement it."[56] And we decided that article VIII "reflects careful consideration of each government branch's role in managing Alaska's resources and textually establishes the legislature's importance in this policy-making area."[57] We

---

[50] *Id.* at 695.

[51] *Id.* at 696.

[52] *Id.* at 698.

[53] 503 P.3d 777, 789-91 (Alaska 2022).

[54] *Id.* at 796 (citing *Brooks v. Wright*, 971 P.2d 1025, 1033 (Alaska 1999)).

[55] *Id.* at 783 (citing *Native Vill. of Elim v. State*, 990 P.2d 1, 7 (Alaska 1999)).

[56] *Id.* at 783-84.

[57] *Id.* at 785.

declined to grant plaintiffs' requests for injunctive relief in part because this would "infring[e] on an area constitutionally committed to the legislature."[58]

Most recently in *Sitka Tribe of Alaska v. State, Department of Fish and Game* we considered whether the constitutional sustained yield clause requires "the Department [of Fish and Game] to provide all relevant information to the Board" of Fisheries as part of the Board's decision-making process.[59] We determined that "the hard look standard already requires the Department [of Fish and Game] to consider relevant information and 'engage[] in reasoned decision making.' "[60] We therefore "decline[d] to create a constitutional requirement that is not in the plain language of article VIII, section 4 of the Alaska Constitution and that would 'infring[e] on an area constitutionally committed to the legislature,' which the legislature has delegated to the Department and the Board."[61] We recognized the legislature's law-making authority under article VIII, section 4, which supports the legislature's authority to apply a more specific definition to the broad constitutional concept of sustained yield. Our precedent recognizes the legislature's discretion in this area, and the legislature acted within that authority in defining sustained yield in AS 16.05.255(k).

In light of the plain meaning of the text of both AS 16.05.255 and article VIII, section 4 of the Alaska Constitution, evidence of the framers' intent related to the sustained yield principle, and our relevant precedent, we conclude that the legislature was authorized to define "sustained yield" as it did in implementing the Constitution's sustained yield principle, and that its statutory definition of sustained yield is consistent

---

[58]     *Id.* at 796.

[59]     540 P.3d 893, 899-900 (Alaska 2023).

[60]     *Id.* at 901-02 (second alteration in original) (quoting *Sagoonick*, 503 P.3d at 803).

[61]     *Id.* at 902 (second alteration in original) (quoting *Sagoonick*, 503 P.3d at 796) (citing AS 16.05.258; AS 16.05.020).

with article VIII, section 4 of the Constitution. We therefore conclude that AS 16.05.255 has a plainly legitimate sweep, and we reject West's facial constitutional challenge.

## VI. CONCLUSION

We AFFIRM the superior court's summary judgment order.